In the Matter of TOOL OWNERS UNION, Petitioner, against WILLIAM H. ROBERTS et al., as Members of the Board of Standards and Appeals of the New York State Department of Labor, Respondents.

Supreme Court, Special Term, New York County, December 16, 1947.

*Raoul E. Desvernine, H. Preston Coursen* and *A. E. Cormeny* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (John P. Powers* of counsel), for respondents.

NULL, J.  This proceeding was instituted under article 78 of the Civil Practice Act for an order directing the respondents, constituting the Board of Standards and Appeals in the Department of Labor, to indorse their approval of the petitioner's statement and designation as a foreign corporation applying to do business in this State.

The petitioner is a Delaware corporation.  It desires to conduct its activities in New York.  The term " union " forming part of its title, the petitioner applied to the respondents for preliminary approval of its statement and designation as required by section 9-a of the General Corporation Law.  As authorized by the statute, the respondents conducted public hearings at which

extended testimony was taken. Thereafter, they filed their opinion and resolution denying approval of the application upon the ground that the petitioner's purposes were inconsistent with public policy in that its title was misleading and confusing and its internal structure undemocratic.

Section 9-a of the General Corporation Law restricts the use, in corporate titles, of the words "union labor," " local union " and other terms commonly associated with labor organizations, to such corporations whose purposes have been found by the Board of Standards and Appeals in the Department of Labor to be " in all respects consistent with public policy and the labor law." It is clear that the word " union " as used in the statute was intended to refer to its generally accepted connotation as a labor union or organization of workers. If there be any conceivable doubt in the circumstances, it is resolved by the very language of the statute which is limited to terms and phrases (almost exclusively associated with labor organizations) such as " American federation of labor," " Congress of Industrial Organizations," " international union " and " building trades council or union ". Moreover, there is the requirement that the use of the prohibited words and phrases be subject to approval by a board in the Department of Labor which is directed to test the purposes of the proposed corporation not alone by public policy but by the provisions of the Labor Law.

In its general aspects, section 9-a of the General Corporation Law is similar to section 9 of the same Law. In part, the latter statute reserves to moneyed corporations alone, the use in corporate titles of words such as " trust ", " bank ", " acceptance ", " insurance ", " guaranty ", " finance " and the like. While not identical, the principal objectives of both statutes are the same. Both reflect the legislative concern with the common tendency to associate the corporate business with the corporate title. While this popular misconception may be of little moment in the case of the ordinary business venture, it is fraught with serious public consequences when directed to enterprises closely related to the general welfare of large groups of people. Additional significance is imported to the problem because a corporation, unlike a partnership or an unincorporated association, bears the imprimatur of the State — a circumstance which ofttimes is confused with approval of its purposes.

It is unnecessary to belabor the quasi-public status of labor unions. The significance of their impact upon the economic and social life of the community has been universally recognized. Just as section 9 of the General Corporation Law provides

against the misuse of corporate titles in relation to the business of banking, insurance and finance, so section 9-a of that Law prescribes safeguards against the misleading use in a corporate title of the words " union " and other terms associated with labor organizations and their recognized practices.

Implicit in these enactments is the expression of clear legislative policy that a corporate title suggestive or descriptive of a business or service affected with a public interest shall not be used indiscriminately but shall be restricted to corporations whose purposes and activities are consistent with that title.

The petitioner admittedly is not a labor union. Prominently set forth in its proposed certificate of incorporation, is the statement that it was organized to safeguard " the right of all persons to be secure in the ownership of the tools of production and their management; * * * to regain and assure for such tool owners equality before the law and to reestablish their position as the primary source of the workers' productivity and prosperity."

According to the petitioner's president, the term " tool owners " was intended to refer to all persons, corporate and individual, who had savings, insurance policies, securities or who were owners of machines and devices. He testified that the petitioner's corporate name was selected for its simplicity and because it described the character of its functions.

The word " tool ", he said, " is the only term I know or could find in the dictionary which was short and which expressed the full meaning of all kinds of devices, mechanisms, instruments used by men to convert raw materials into useful goods and services. The word 'owner' needs no further explanation; they are people who own the tools — and some of them use their own tools just as I do. Finally, the word ' union '; in the choice of the word we referred to the dictionary."

The court has no concern with the economic concepts of the petitioner or with the objectives which its organizers seek to advance. The sole question is whether the respondents were legally warranted in determining that the petitioner's purposes, when read in connection with its proposed title, tended to be misleading and confusing in the sense that they were violative of public policy.

The record discloses, as the respondents found, that in many industries the average union worker owns and furnishes the tools which he uses in connection with his work. Such a worker is very definitely a tool owner. In addition, the petitioner employed the term " local union " to designate its district or

regional affiliate and issued, as evidence of membership **a** " union card ", not altogether unlike that issued by labor organizations. In these circumstances and in the light of the petitioner's stated purposes, expressed and amplified in public advertisements, it is clear that the combination of· the words in the petitioner's title lends itself to misunderstanding and confusion. There is evidence that the petitioner's founders were not unaware that they had chosen for their title and corporate practices, words and terms that by long usage and custom are commonly associated with labor unions and their activities. The emphasis by the petitioner's president upon the dictionary meaning of these words and terms ignores reality. It suggests a subtle attempt to simulate labor organizations by employing their traditional technique of practice and language. In the circumstances, I am of the opinion that the record fully justifies the conclusion reached by the respondents that the petitioner's purposes, insofar as they relate to the use of the word " union " in its title, are misleading and confusing and contrary to public policy, within the meaning of section 9-a of the General Corporation Law.

Accordingly, no useful purpose would be served in discussing the petitioner's complaint that the respondents exceeded their authority in considering petitioner's organizational setup and the by-laws prescribed for its management. Presumably, this contention is directed to so much of the respondents' opinion which characterized the petitioner as a " pressure group " with policies, actions and finances to be administered solely by the three incorporators consisting of petitioner's president, his wife and his business partner. It is unnecessary to determine whether that criticism, standing alone, would be sufficient to warrant the disapproval of the petitioner's application. There is, however, a pertinent relationship between the methods prescribed for corporate conduct and the purposes sought to be accomplished. The respondents, as a board, were required to " make such inquiry into the purposes of the proposed corporation as it may deem advisable, and * * * order a hearing if necessary to determine whether or not the purposes of the proposed corporation are in all respects consistent with public policy and the labor law." (General Corporation Law, § 9-a.) The statute is broad enough to include inquiry into the nature of the petitioner's internal structure and management.

I have noted no violation of the petitioner's constitutional rights and the hearings were conducted fairly and impartially. There is no showing that the respondents exceeded their powers

or that their decision was arbitrary or capricious. The petitioner's president testified at great length. He was represented by counsel who participated in the proceedings and who was extended the opportunity to question those who appeared in opposition. The transcript of the record of the hearings consists of 272 pages of testimony and many exhibits. Every facility was afforded to the petitioner to present its position and to offset and refute the evidence submitted by those appearing in opposition to show that its purpose was not inconsistent with the public policy and the Labor Law of this State.

The point is made by the petitioner that the resolution of the respondents disapproved " the certificate of authority of Tool Owners Union, a Delaware corporation * * * '', whereas no such certificate was ever submitted to them for approval. It is obvious that the respondents in their resolution of February 27, 1947, intended to refer to the statement and designation submitted by the petitioner. No other document was before them, nor was there anything else to which they might give or deny their approval. The use of the term " certificate of authority " was a mere misnomer, which in no way affected the merits of the controversy. The resolution is deemed amended and corrected accordingly.

The petitioner's application is denied.